WATSON, Judge,
dissenting:
Assumption of risk is an affirmative defense.[1] The burden of proof is on the defendant. The jury here concluded that Mrs. Guillotte did not knowingly and voluntarily assume the risk of stepping across the wire barring her path at knee level.[2] The test to be applied is a subjective one and not the objective reasonable man standard used for contributory negligence. Prosser, Law of Torts, 4th Ed., p. 447. The question is generally within the province of the jury. The jury here heard Mrs. Guillotte’s testimony, saw her physical condition and assessed her capability. Without the benefit of this observation of the 78 year old plaintiff, the majority concludes that she was “spry and alert”, thereby substituting its judgment for that of the jury. The jury’s conclusion that Mrs. Guillotte did not have a full knowledge and appreciation of the danger involved in stepping over the wire is not manifestly erroneous. Mrs. Guillotte had no reasonable alternative.[3] Her decision to step over the wire must be assessed with some appreciation of the physical and mental deterioration which comes to all in later years. Compare Garner v. Crawford, 288 So.2d 886 (La.App. 1 Cir. 1974). Mrs. Guillotte was proceeding in her accustomed path and was presented with an unexpected hazard. Her response to the danger presented was not unreasonable even under the objective test of the ordinary reasonable man. A subjective evaluation of her conduct is well nigh impossible for an appellate court.
This is essentially a factual matter with a reasonable evidentiary basis for the jury’s decision.
Apart from the fact that Mrs. Guillotte did not act unreasonably in attempting to step over the wire in her path, she should not have been exposed to that risk. While Christmas lights are pleasant, there is no conceivable reason for stringing them at knee level across the main sidewalk leading to the Iowa City Hall. To quote from Informed Choice in Law of Torts, 22 La.L.R. 17 at 62, 63 and 64:
. the importance of allowing persons in the plaintiff’s position to go about their business free from this sort of risk outweighs the defendant’s interest in acting as he did. * * * As far as the defendant’s conduct is concerned, there is every reason to deter it and to cast upon him the burden of compensating the plaintiff. * * * With occasional inexplicable aberrations, the cases do in fact support this view. A traveler on a public way who consciously exposes himself to a risk created by the defendant’s negli *1193 gence will not be barred from recovery unless his decision to proceed is unreasonable.
The above analysis by Professor John H. Mansfield of the Harvard Law School is supported by extensive jurisprudence, including the following cases:
In Mosheuvel v. District of Columbia, 191 U.S. 247, 24 S.Ct. 57, 48 L.Ed. 170 (1903), a plaintiff fell in attempting to step across a water box in the sidewalk at the front of her house. It was possible' to go to the right or left instead of stepping across and the plaintiff had stumbled over the box on a prior occasion. The Supreme Court held that the plaintiff could not be held contrib-utorily negligence as a matter of law and remanded for a new trial.
Harris v. Township of Clinton, 64 Mich. 447, 31 N.W. 425 (1887), dealt with a plaintiff who lost his horse while attempting to cross a section of road partially washed away and under water. After a directed verdict for defendant, a new trial was ordered to enable a jury to determine whether he was reasonable under the circumstances in continuing on the road.
Campion v. City of Rochester, 202 Minn. 136, 277 N.W. 422 (1938) involved a woman who fell on an icy crosswalk and was allowed to recover against the city. The appellate court affirmed, concluding that the issue of contributory negligence in using the walk was for the jury.
In Patton v. City of Grafton, 116 W.Va. 311, 180 S.E. 267 (1935) a plaintiff slipped on some snow and fell into an open cellar alongside a public alley. A judgment in her favor was affirmed, the court quoting from an earlier case as follows:
Pedestrians have a right to walk on sidewalks in the most convenient route to reach their destination, and, while they cannot recklessly place themselves in danger of accident, they need not foresake such walks merely because there may be some danger in passing over them. 180 S.E. 269.
Ahern v. City of Des Moines, 234 Iowa 113, 12 N.W.2d 296 (1943) held that the question of a pedestrian s contributory negligence in using an icy sidewalk was for the jury.
In Dougherty v. Chas. H. Tompkins Co., 99 U.S.App.D.C. 348, 240 F.2d 34 (1957), use of a temporary walk was stated to be non-voluntary in an assumption of risk sense, there being no right to force the pedestrian to take or leave the risk, an exact parallel to Mrs. Guillotte’s situation.
Kanelos v. Kettler, 132 U.S.App.D.C. 133, 406 F.2d 951 (1968) quotes from Restatement of Torts 2d to hold that assumption of risk is not a viable doctrine where a plaintiff “ . . .is compelled to accept the risk in order to exercise or protect a right ., of which the defendant has no privilege to deprive him.” 406 F.2d 955. In other words, one, like Mrs. Guillotte, with the right to use a public sidewalk, does not assume the risk of its hazards.
Unfortunately the majority’s substitution of judgment for that of the jury will probably imbed in the jurisprudence another of those “inexplicable aberrations” referred to by Professor Mansfield.
I respectfully dissent.

.It has been abolished as a defense in many jurisdictions. See, for example: Leavitt v. Gillaspie, 443 P.2d 61 (Alaska, 1968); Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1972); Parker v. Redden, 421 S.W.2d 586 (Ky.,1967); Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965); McWilliams v. Parham, 269 N.C. 162, 152 S.E.2d 117 (1967); McGrath v. American Cyanamid Co., 41 N.J. 272, 196 A.2d 238 (1963).

. See jury charge “Assumption of risk” at TR. 59. The jury was charged that “ . . . you may consider his [her] age, experience, and capacity . . .’’in deciding assumption of risk.

. Mrs. Guillotte testified that she saw no way she could pay her bill except by stepping over the wire.