**WAGAR et al. v. STALCUP.**
No. 6186.

United States Court of Appeals for the District of Columbia.

Argued Oct. 8, 1933.

Decided Nov. 12, 1934.

P. H. Marshall and W. Cameron Burton, both of Washington, D. C., for appellants.

James Sherier, of Washington, D. C., for appellee.

Before ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a judgment of the Supreme Court of the District of Columbia for damages sustained by the appellee, plaintiff below, while a tenant in apartment 9, the Akron, in this city.

It appears that plaintiff leased the property in question from the H. L. Rust Company, a corporation acting as the agent in the management and renting of the property for the appellants, defendants below. Early in the morning of October 3, 1926, plaintiff was awakened by escaping gas which she discovered was from the ceiling fixture in the kitchen. She instructed her daughter to notify the gas company, and she called the janitor of the building. When the janitor came, she cautioned him not to strike a match, but to open the back door, informing him that the gas company had been called. The janitor made no response, but went through the dining room and hall to the kitchen, went to the stove, and lighted a match. He had not opened the door, and plaintiff again told him to open the door, that the leak was not in the stove but in the fixture. The janitor raised his hand, in which was a lighted match, toward the fixture, and an explosion occurred from which appellee received serious burns and for which damages in the present case were awarded.

The declaration charged that the accident was due to defendants' failure to keep the apartment in proper repair and condition, alleging that they were bound to do so under the terms of the written contract; and specifically charged defendants with the failure and neglect to repair the gas fixture in the kitchen, which had become loosened from its fastenings upon the ceiling of the kitchen, though defendants through their agents had long prior to the date of the accident been requested and notified to repair the fixture. Plaintiff further alleged in her declaration that, while the defendants, by their agent and servant, the janitor, was "engaged in and about repairing said leaking gas fixture * * * he negligently and carelessly caused a match to be ignited in said kitchen, thereby exploding a large volume of gas," resulting in the accident of which the plaintiff complained.

The defendants answered by three principal pleas: (1) That the Rust Company was an independent contractor and leased the apartment to plaintiff by an instrument under seal to which defendants were not parties. (2) That by the terms of the lease neither the Rust Company nor defendants were required to make repairs in the apartment, and that plaintiff had made no request for repairs to the gas fixture as alleged in the declaration. They also denied that it was any part of the duty of the janitor to repair the gas fixture, or indeed that he attempted to repair it. (3) That it was the duty of the plaintiff, the tenant, to repair the fixture.

When appellee's testimony had been submitted, defendants moved for a directed verdict "upon the ground of a variance between the allegations of the declaration and plaintiff's evidence; because of contributory negligence of plaintiff; because plaintiff had failed to prove facts showing liability of the defendants; and because, on the evidence, defendants were not responsible for the acts of the janitor." The court denied the motion to which the defendants excepted, and, electing to stand upon the motion, refused to introduce any evidence by way of defense.

Counsel for defendants, in a number of assignments of error, urge that the court erred in overruling the objection of defendants to the admission of the lease, and also the will of Humphrey R. Wagar, under which defendants, as trustees, were charged with the operation and upkeep of the apartment, and under whom the Rust Company, as the agent of defendants, entered into a lease agreement with plaintiff. The lease contained a clause that all repairs rendered necessary by the negligence of plaintiff should be paid for by her, also the usual clause reserving to the lessor or his representative the right to enter the apartment to protect it against the elements, or accidents, or to show it to prospective tenants. The objection was based upon the ground that the lease was a sealed instrument to which the defendants were not parties, and that under its provisions no obligation was placed upon the landlord to make repairs.

It is insisted that the effect of the court's ruling in admitting the lease in evidence was to give the jury to understand that, inasmuch as the lease specifically required repairs, rendered necessary by plaintiff's negligence, to be paid for by her, it impliedly imposed upon the landlord the obligation to take over repairs not caused by her negligence.

The will contained a provision that the trustees, appellants here, should keep the property in good repair, insured, rented, tax-

es paid, etc. The court, in admitting the lease and will in evidence, stated that it was done "as showing the relationship between the parties." In this we think the court properly viewed the case. The declaration was one sounding in tort; the tort arising out of the contractual relation between the landlord and tenant existing at the time of the accident. It was upon this theory that the case was tried, and not upon the theory of a breach of contract on the part of defendants to keep the property in proper repair. The court consistently throughout the trial sustained the objections of counsel for defendants to the introduction of testimony on the subject of repairs on the specific ground that defendants were not required by the terms of the lease to make repairs upon the property. The court also in the instructions on this point was so clear that no possible misunderstanding could arise in the minds of the jurymen.

The case was tried, and we think properly, upon the theory that the cause of action arose from the janitor's lighting the match which directly caused the explosion from which appellee suffered her injuries. This is properly alleged as a cause of action in the declaration, and, if the evidence is sufficient to sustain that cause of action, it is unnecessary to consider further the terms and conditions of the lease and the will, since the action is for a common-law tort and not for a breach of contract. "The injury complained of is the cause of action. It may have been the result of one of several distinct acts of negligence, or it may have been contributed to by all of them, or by more than one. That is a matter of proof. If the plaintiff can prove one act of negligence sufficient to cause an actionable injury it is enough." Sprow v. Staples, 38 App. D. C. 219.

Several assignments of error relate to the introduction of testimony by the plaintiff as to neurasthenia and nervous injury resulting in damage to plaintiff's nervous system, causing a highly nervous condition and insomnia. Objection was interposed by counsel for defendants to the introduction of this testimony. The court admitted it upon the statement of counsel for plaintiff that it would be properly connected by medical testimony. When the testimony was concluded and the medical experts had testified on the subject, counsel for defendants moved to strike out all of the evidence relating to the subject of neurasthenia, insomnia, and injury to the nervous condition of the plaintiff. The court sustained this motion; but it is contended by counsel for defendants that the testimony, having gone to the jury, so operated to their prejudice as to prevent an unbiased verdict in the case.

We think that, if error was committed in admitting the testimony, it was completely cured, not only by the sustaining of defendant's motion, but by the instruction of the court directing the jury "to eliminate nervous disorders as not proved in the case," and stated in their hearing: "When there is no proof in this case about neurasthenia and nervous injury, why talk about it?" The court further stated in concluding its charge: "About injuries resulting from damage to the nervous system, there was no evidence; there would be no justification for considering that, because it is not established by any sufficient evidence to justify your taking that into consideration." In view of the ruling of the court and the positive instructions to the jury, we are clearly of the opinion that there can be no implication that the jury was misled by this evidence.

With the elimination of the question of repairs from this case, the charge of contributory negligence by reason of the plaintiff's failure to keep the light fixture in proper repair goes with it. The failure of plaintiff to keep the fixture in repair, as she may have been required to do by her contract, if due to her negligence, was not the cause of the accident resulting in her injury. The proximate cause of the accident was the lighting of the match by the janitor. As to whether or not plaintiff negligently placed herself in a position where she might reasonably expect an explosion and injury resulting therefrom, the court properly instructed the jury that this was a question of fact for them to determine from all the circumstances in the case, and that, if they found that plaintiff had been guilty of contributory negligence, they should not return a verdict in her favor. This, we think, was all that could be asked by the defendants on the subject of contributory negligence. Assuming plaintiff's evidence to be true, and it stands uncontradicted, the janitor was clearly negligent in striking the match when he had been cautioned not to do so. The question of contributory negligence, therefore, was not one of law but of fact, a question upon which reasonable men might well differ in their conclusion. "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict

in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them." Richmond & D. Railroad Co. v. Powers, 149 U. S. 43, 13 S. Ct. 748, 749, 37 L. Ed. 642.

Error is assigned on the admission of the testimony of a witness, Robinson, who was a visitor in plaintiff's apartment, and at the time of the accident was sleeping on a couch in the dining room. He was aroused by plaintiff's daughter, whom he subsequently married, and was asked to state what, if any, exclamation or statement his wife or plaintiff made to him when he awakened. The question was objected to as calling for hearsay. The objection was overruled, and witness answered that his wife kept saying, "He lit a match; I told him not to." Counsel for plaintiff insist that this was properly admitted as part of the res gestæ. Whether this should be treated as a statement of a past event, and therefore hearsay, it is not necessary, we think, here to decide, since in any event the testimony could not have been prejudicial to the defendants. The daughter and the mother had both testified that he lighted the match and that they had told him not to. This fact was conclusively established, since it stands uncontradicted by the evidence. If there had been a conflict of evidence as to this fact, and a question thereby presented whether or not the admission of the evidence constituted reversible error, a determination of whether it came within the rule of res gestæ might become necessary, and present a question, not free from difficulty.

Exception was taken to certain instructions of the court, which we have examined carefully, and find that the objections are without merit. The court in the instructions submitted the case fully and fairly to the jury. The award of damages was not excessive, and from an examination of the whole case we find nothing that would warrant reversal.

The judgment is affirmed, with costs.